Good morning, your honor. It's Robert Gambiner on behalf of Mr. Mondragon. I'd like to reserve two minutes for rebuttal. Mr. Mondragon decided to go to trial. His trial began. The jury was sworn, jeopardy attached. The reason that his trial did not get completed has nothing to do with any kind of manifest necessity, but is due to the fact that the Western District of Washington enacted a local rule that was in direct violation of Rule 11. The trial court allowed Mr. Mondragon to avail himself of that illegal procedure after the trial had started. Well, he asked for the settlement conference and it resulted in a plea of guilty, correct? Right. And his plea was, as I understand it, not in other respects unknowing or involuntary. And it just strikes me as kind of no good deed goes unpunished. He asked for something that he got and I'm not really sure why he's now entitled to say, oh, never mind. Well, the problem, that's the easy way to analyze this, but respectfully, I don't think it's the correct way to do it. You'd like us to do it the hard way. Well, I'd like to do it the way that accounts for the reality of the situation. The problem here is that it's the court that is fundamentally at fault. Now, I'm not saying that in the sense that I've never at any point in these proceedings accused Judge Settle, who is the district court judge, or Judge Martinez of harboring any ill will toward Mr. Mondragon. That's not the point, though. What happened here was that there is a direct and absolute prohibition against judicial participation in plea bargaining. And there's also a longstanding and well-recognized right for a defendant to have his case decided by the particular tribunal that has been picked to sit in judgment on. But in the double jeopardy context, doesn't it require, wouldn't it require us to find that the purpose of having him plead guilty was specifically to avoid continuing with that particular jury or tribunal rather than simply to be helpful? That's a theoretical question, not a factual question. Do we have to find that there was an intent to avoid continuing with the same tribunal? I think you do have to find that. But the overwhelming, the uncontradicted evidence is that there was the entire purpose of having the settlement conference. The settlement conference wasn't just a chance for everybody to sit down and have a cup of coffee and, you know, talk about what the weather was going to be like the next day. The settlement conference's purpose was to get Mr. Mondragon to plead guilty. And that's exactly what happened. But is that the equivalent of trying to avoid adjudication by the particular group of jurors as distinct from the generic efficiency of the court system? Well, I'm not sure I see that that's a meaningful distinction. Well, it may be if the rule is that we have to find that kind of intent on the part of the court. I think the only intent you have to find, and I think this is a... Isn't that the distinction the cases make? I'm sorry? Isn't that the distinction the cases make, including the Ninth Circuit? I don't think the cases do make that distinction. I think I cited the... I think it's a... No, Peralza. Well, what about Torres, for instance? I'm sorry? Torres or the Seventh Circuit cases. They seem to go the other way, don't they? Well, I don't know if they... I'm not sure that they really go the other way so much as... One of the difficulties is, and I will concede this, that there are very few cases that have ever really analyzed what the phrase judicial goading means. But I'm going to just quote from Peralza. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means. Now, that was the only intent of the settlement conference, and that's exactly what happened. The settlement conference took place, and even though Mr. Mondragon had decided to go to trial, and even though the trial had begun, immediately after the settlement conference he pleads guilty. So the judge should have denied the request for a settlement conference. Absolutely. And even though your client may have gotten more time, or if he had gone to trial and been convicted, it would have been, you think, better and more proper for the judge to deny the settlement conference. Certainly, because, I mean, in any adversarial proceeding, there's also risk when you go to trial. We don't know. I mean, the trial might have turned out worse. It might have turned out better. I mean, frankly, it wasn't a very good deal that Mr. Mondragon ended up accepting. But whether it was a good deal or not isn't the point. The point is, why was the deal reached? And the deal was reached because of this impermissible settlement conference, which is, you know, the government just filed their letter yesterday. As I understand it, they're conceding now that they're not going to defend settlement conferences anymore. So we're past that part of the argument. What their letter also says, as I recall it, is we don't have to reach that question because your client got all he was entitled to get out of that anyway. Well, that is what their letter said, and, of course, they're taking a different position than I am. You agree with that, the last part of the government's letter that, well, he got everything he's entitled to get out of any breach of the rules? No, I don't agree with that. The reason is the – What did he not get? He was permitted to withdraw his plea, right? Right. But the thing is that doesn't really give Mr. Mondragon any meaningful relief. He's now being – What do you mean? The complaint is he shouldn't have held a settlement conference. It was all geared toward, you know, coercing him to plead guilty. So this is fine. You know, he can withdraw his plea. He's right back where he started from. Why didn't he get everything he's entitled to get? Because what he didn't get was exactly what – the reason that you've got these rules about manifest necessity. What he didn't get was he didn't get his right to have his case decided by the tribunal that he had selected. If this had occurred prior to the jury being sworn, we wouldn't have an argument. No, but what you're suggesting creates really a perverse incentive because what it does is suggest that a defendant should try to, whether rightly or wrongly, seek a settlement conference as soon as the jury is impaneled, plead guilty, and then voila, everything is gone because of double jeopardy. I mean, it's a really – if you think that you're entitled to more, it seems to me it creates an incentive to do this more often instead of less often. But I don't really think that that's the case because – But, you see, the problem is your argument about, well, you know, the intent of the prosecutors and the intent of the judges. None of this would have happened if your client hadn't asked for the settlement conference, right? He initiated this entire – we'll call it the goading incident. No, but the reason that that's not correct is because there's a predecessor problem, which is the reason this all happened was because the Western District of Washington chose to ignore Rule 11 and – Well, there's also another predecessor problem. You know, maybe after the jury was selected, your client didn't like the jury, so he says, I'm going to ask for a settlement conference, right? It could have been exactly because he didn't want that jury. There could have been all sorts of reasons. Exactly. There could have been all sorts of reasons, none of which were goading by the government. Well, but I disagree with that because the reason I disagree with it is because there was no need for this to happen at all. I agree with that. But the point is because there was no need, that's exactly why you can't – you know, as you said, there are all kinds of reasons, and why should we just focus on the one out of many that points toward goading? Because the whole reason that all this happened in the first place was because there was this system in place which the judge decided to allow to occur that isn't permissible. I mean, what if the judge said after picking the jury, okay, look, you know – Well, let me get back a little bit. Sorry. So you're saying we have to decide as a predicate whether or not the local rule is a valid rule? Yes. I do say that. I think I'm out of time here. You are, but we'll give you a minute for rebuttal when the time comes, since we used a lot of your time. All right. Thank you very much. Thank you. We'll hear next from the government. Good morning, Your Honor. May it please the Court. My name is Helen Brunner, and I'm here to represent the United States. I don't think this is a case, as the defense suggests, that turns on simply an intent to terminate the trial. Let me start with Perelza, if I'm pronouncing it correctly, the case in which the defense relies. Yes, indeed, the case, this Ninth Circuit case, does talk about the only relevant intent being the intent to terminate the trial, but it's discussed in the context of prosecutorial misconduct, where the prosecutor in closing argument made a burden-shifting argument. And in that context, the question, as it is in virtually every case that deals with prosecutorial goading, is whether the misconduct by the prosecutor was aimed at having a defendant ask for a mistrial and therefore causing the mistrial as opposed to avoid an acquittal, as opposed to an intent to obtain a guilty verdict by the jury, however, by misconduct or not. Do we, in your view, can we assume that the local rule is not valid and still conclude that your position is correct? I think you can, Your Honor, for several reasons. As we stated in our brief, I think this court in Taylor v. Kinshleo made clear that where a defendant is allowed to withdraw his guilty plea because it was involuntary, where a mid-trial guilty plea, that does not bar a retrial by the double jeopardy clause. What follows from that is Tadeo, where the Supreme Court concluded that an involuntary mid-trial guilty plea, coerced in large measure by the judge's comments to defense counsel, again, did not bar retrial. And it is Tadeo and the comment in footnote number three in Tadeo that then becomes the subject in Kennedy. And while I guess we, opposing counsel and I, would probably agree that although the point of Oregon v. Kennedy was to clarify the double jeopardy rules, it might be less than a model of clarity as it applies to judges. But it seems to me that when Kennedy doesn't overrule Tadeo, and Tadeo deals precisely with the idea of an involuntary plea, and that's what we would be talking about with a Rule 11 violation here, that Tadeo controls this outcome. Let me ask you a background question. In your 28-J letter, you said, you've concluded, your office, that you're no longer going to engage in these, I'll call it, court-supervised plea negotiations, right? That's correct, Your Honor. In other words, it's a recognition that, at the very least, that rule stands on shaky ground. Now, is that a, did that come from Washington, or did you make that decision on your own, or you can't tell me? I can tell you, Your Honor, it's a combination of both. There are a total of six districts, they were all in the Ninth Circuit, that had various rules involving settlement conferences to include and use them to varying degrees, and collectively some discussion among the various offices and the Solicitor General's office to arrive at the position that we would no longer be doing them in light of the Villa. You say in light of the Villa? Yes. In short, that was the determining factor for both our offices, a decision we made independently even before those greater decisions. When you say in light of the Villa, that's because of the discussion in that case about the requirements of Rule 11? That's correct, Your Honor, and the fact that although the magistrate judge was presiding over a hearing at the time involving the defendant, it was nonetheless, the statements were nonetheless not of a presiding judge. Yeah. So there is definitely concern about that. Although he made some juicy comments. He did indeed. He did indeed. But that all said, I don't think you need to reach that decision, or you can reach it and still find for the government in this case, I think, today. But as Judge Draper says, even if we assume that that local rule is not valid, as you say in the last part of your letter, you think you're still entitled to an affirmation because of what you've just been arguing? Correct. Correct. And there's no doubt that Mr. Mondragon set it in motion. He requested it. I mean, ironically, I don't know whether you can conclude that the judge, to the extent that you want to look at what the judge might have concluded or what the judge's intent was here, the judge went forward even after Mr. Mondragon asked for a settlement conference with the jury selection. I think that in and of itself suggests that he wasn't necessarily going to assume that this was going to result in an end of the trial. But obviously we're all speculating somewhat because that question is not in the record. If the court has no other questions for me, I would ask the court to affirm. I don't believe that we do. Thank you. And you may have a minute more if you'd like it. Okay. I certainly would like it. First, discussing Tateo and Argonne v. Kennedy. Argonne v. Kennedy is 20 years after Tateo, and Argonne v. Kennedy specifically recognizes that there may be instances in which judicial goading could make it, under the double jeopardy clause, impermissible to have a retrial. So I don't think Tateo is the controlling precedent. Second, I just want to make one last effort to explain this position, which is that if a court offers something that is the rules do not allow, the court has to take the responsibility for that. It's not the defendant's fault that he takes advantage of something that should never have been offered in the first place. And that's what the problem fundamentally is here. And that's why even if the court feels it's maybe a windfall or it's, you know, he's taking advantage of the court's good nature, that's not really what happened here. What really happened is there was a clear rule, the court violated the rule, and the reason the court violated the rule was the court was doing what it could to facilitate a guilty plea, which is what happened instead of the trial that should have happened. Thank you, counsel. The case just argued is submitted. We appreciate the helpful arguments of both of you in this interesting matter.
judges: Tashima, Graber, Murguia